IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| QUAAN SHEKIEM WHITE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JON WETZEL, et al. | : | NO.  15-4405 |
| | : | |

## MEMORANDUM

**Padova, J.**                                                   **February 23, 2017**

Before the Court is Petitioner Quaan Shekiem White's Petition for a Writ of *Habeas
Corpus* pursuant to 28 U.S.C. § 2254.  On May 20, 2016, United States Magistrate Judge
Marilyn Heffley filed a Report and Recommendation that recommends denying the Petition in its
entirety.  Petitioner has filed Objections to the Report and Recommendation.  For the following
reasons, and after careful consideration of the Report and Recommendation and Petitioner's
Objections thereto, we overrule the Objections, adopt the Report and Recommendation as set
forth herein, and deny the Petition with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 9, 2009, a man named Joseph Botz was found fatally shot in a parking lot in
Allentown, Pennsylvania.  Commonwealth v. White, No. 2457-2009, slip op. at 7-8 (Lehigh Cty.
Ct. Com. Pl. May 27, 2010).  Several members of a group who had spent that night together at a
bar gave testimony during Petitioner's jury trial that implicated Petitioner in the murder of Mr.
Botz.  Olasheiba Hurdle, a woman who left the bar with Petitioner immediately prior to the 2:00
a.m. shooting, testified that she heard Petitioner say, "'You looking for this?'" before hearing a
gunshot.  Id. at 5 (quoting N.T. 2/3/10 at 143, 148, 228).  Mrs. Hurdle also testified that she
heard another member of the group, Kenyata White, "say, 'What the fuck did you do that for?'
before [Petitioner] and [Kenyata] White drove off." Id. at 5-6 (quoting N.T. 2/3/10 at 150, 151).

Kenyata White, who is Petitioner's brother, testified that immediately after the shooting, he saw a gun "inside the vehicle between [Petitioner] and the gear shift" and that Petitioner "indicated to him that Mr. Botz had it coming."  Id. at 4, 6 (citing N.T. 2/3/10 at 235, 253).  Another member of the group, Donald Tillman, testified that while driving back to Petitioner's home that night, Petitioner told him that "'he shot him in the head.'"  Id. (quoting N.T. 2/4/10 at 91).  Mr. Tillman also testified that Petitioner told him, prior to the death of Mr. Botz, that Petitioner was going to kill Mr. Botz because "'[Petitioner] and somebody did something and went back and told [Botz], so [Botz] came back and told [Petitioner] he didn't like that.'"  Commonwealth v. White, No. 830 EDA 2013, slip op. at 3 (Pa. Super. Ct. Sept. 16, 2014) ("White III") (second and third alterations in original) (quoting N.T. 2/4/10 at 72).  However, Petitioner testified in his own defense at trial, stating that he had been friends with Mr. Botz for a long time and that Mr. Tillman shot Mr. Botz.  Id. at 9 (citations omitted).

During trial, the Commonwealth played a recording of several hours of Detectives Tim Salgado and Andrew Hackman's interrogation of Petitioner, in which the detectives repeatedly stated that Petitioner was lying and that he was guilty of the murder.  Id. at 4, 14-15.  During closing arguments, the Government cited Mr. Tillman's references to Petitioner's "secret" motive, stating that Petitioner had killed Mr. Botz to prevent anyone from finding out about something "'that he and that other guy had done.'"  Id. at 26 n.18 (quoting N.T. 2/8/10 at 347).

On February 9, 2010, Petitioner was convicted of Murder in the First Degree as well as a violation of the Uniform Firearms Act.  On March 18, 2010, Petitioner was sentenced by the state trial judge to a mandatory sentence of life imprisonment without parole on the murder charge and a consecutive sentence of 5-10 years of imprisonment for the firearm violation.  Id. at 6.  On April 6, 2011, the Pennsylvania Superior Court affirmed the state trial court's judgement

of conviction and sentence, and denied Petitioner's direct appeal.[1]   Id.   The Pennsylvania

Supreme Court subsequently denied Petitioner's Petition for Allowance of Appeal on August 24,

2011.  Id.

On August 27, 2012, Petitioner filed a counseled Petition for collateral relief pursuant to

Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat § 9541 et seq., and filed

an amended Petition on November 13, 2012.  Id.  Petitioner asserted five claims of ineffective

assistance of counsel in his amended PCRA petition.[2]  Commonwealth v. White, No. CP-39-CR-

2457-2009, slip op. at 5-6 (Lehigh Cty. Ct. Com. Pl. Mar. 4, 2012) ("White II").  After holding

an evidentiary hearing on November 19, 2012, the PCRA court denied the Petition on March 4,

2012.  Id.  On September 16, 2014, the Pennsylvania Superior Court affirmed the PCRA court's

decision.   White III at 29.   On June 17, 2015, the Pennsylvania Supreme Court denied

Petitioner's Petition for Allowance of Appeal, which sought review of the PCRA court's

decision.  Commonwealth v. White, 117 A.3d 29 (Pa. 2015).

Petitioner filed the instant Petition on August 6, 2015.  He raises two claims for relief

based on ineffective assistance of counsel: (1) trial counsel "fail[ed] to object or to request

---

[1]Petitioner obtained new counsel, Michael Brunnabend, for his direct appeal, and new privately-retained counsel, Burton A. Rose, for his state PCRA proceedings.  White III at 6.  Mr. Rose is one of Petitioner's attorneys in the instant § 2254 proceedings.

[2]Petitioner's five claims of ineffective assistance of counsel in his PCRA petition were that his trial counsel failed to: (1) lay a proper foundation by cross-examining Mr. Tillman regarding Mr. Tillman having allegedly told Petitioner's wife that Mr. Tillman was the person who had shot Botz; (2)  object to repeated references by the detectives that they believed Petitioner was guilty and that his statements were not truthful; (3) impeach witness Kristi Farmer with the fact that she had previously been convicted of a crime and was likely under the influence of alcohol when she observed the incident; (4) object when the jury heard suggestions that Petitioner may have committed another serious criminal offense; and that appellate counsel was ineffective in failing to appeal the trial judge's refusal to instruct the jury as to the offense of Involuntary Manslaughter.  (Petition for Relief under the Post-Conviction Relief Act at 3-4, 5, 7, 9, 11.)  The instant Petition is limited to the second and fourth ineffective assistance of counsel claims.

appropriate instructions regarding testimony at trial that the police investigators disbelieved the Petitioner's denial of guilt;" and (2) trial counsel "fail[ed] to object or request curative instructions regarding other bad acts attributed to the Petitioner." (Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Pet'r's Mem.") at 3, 10 (full capitalization omitted).) The Magistrate Judge has recommended that we deny the Petition as to both claims. On May 31, 2016, Petitioner filed Objections to the Report and Recommendation ("Objs."), challenging the Magistrate Judge's recommendation that he was not denied effective assistance of counsel.

## II.    LEGAL STANDARD

Where a habeas petition has been referred to a magistrate judge for a Report and Recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for writ of habeas corpus may only be granted if the state court's adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court interpreted the two components of § 2254(d)(1) and explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a

4

question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13.

To determine whether a state court's application of federal law is unreasonable, a court must apply an objective standard, such that the relevant application "may be incorrect but still not unreasonable." Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001) (citing Williams, 529 U.S. at 409-10); see also Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999) (en banc) ("In making this determination, mere disagreement with the state court's conclusions is not enough to warrant habeas relief."). The habeas court should accord deference to the factual findings and legal determinations of the state courts. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) ("Factual issues determined by a state court are presumed to be correct . . . ." (citing 28 U.S.C. § 2254(e)(1))). Thus, a petitioner must establish by "'clear and convincing evidence,' that the state court's determination of the facts was unreasonable in light of the record." Roundtree v. Balicki, 640 F.3d 530, 537-38 (3d Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1) and citing Rice v. Collins, 546 U.S. 333, 338-39 (2006)).

## III.    DISCUSSION

Petitioner objects to the Magistrate Judge's recommendation that we deny his two claims for relief based on the ineffectiveness of his trial counsel. He also objects to the Magistrate Judge's recommendation that we not issue a certificate of appealability. We address each of Petitioner's objections in turn.

A.    Ineffective Assistance of Counsel

A claim for ineffective assistance of counsel is grounded in the Sixth Amendment right to counsel, which exists "'in order to protect the fundamental right to a fair trial.'"  Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).  An ineffective assistance claim must meet the two-part test advanced by the Supreme Court in Strickland.  Petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.  Essentially, a petitioner "must show that 'counsel's representation fell below an objective standard of reasonableness'"  Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 688), and "demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,'"  id. (quoting Strickland, 466 U.S. at 694).  In determining reasonableness, because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," we must be "highly deferential" in our scrutiny of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  It is presumed that "counsel's conduct might have been part of a sound strategy," and "if the Commonwealth can show that counsel actually pursued an *informed* strategy (one decided upon after a thorough investigation of the relevant law and facts), the 'weak' presumption becomes a 'strong' presumption, which is 'virtually unchallengeable.'"  Thomas v. Varner, 428 F.3d 491, 500 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 690).  In determining prejudice, "the question is whether there is a reasonable probability that, absent the

errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.

In reviewing Petitioner's claim for post-conviction relief, the PCRA court applied Pennsylvania's ineffectiveness standard, which requires a defendant to establish that: "(1) his underlying claim is of arguable merit; (2) counsel's act or omission was not reasonably designed to advance the defendant's interests; and (3) but for trial counsel's ineffectiveness, a reasonable probability exists that the outcome of the proceedings would have been different." White II at 6 (citing Commonwealth v. Pierce, 527 A.2d 973, 974-75 (Pa. 1987)). The United States Court of Appeals for the Third Circuit has held that the Pierce standard comports with the clearly established federal Strickland standard. Werts, 228 F.3d at 203-204. As a result, Petitioner must establish that the Pennsylvania courts' application of Pierce was "not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (citations omitted). However, the Supreme Court has instructed that "[s]urmounting Strickland's high bar is never an easy task." Nguyen v. Attorney General of New Jersey, 832 F.3d 455, 465 (3d Cir. 2016) (alteration in original) (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). Thus, the Strickland standard must be applied "'with scrupulous care,'" which makes it "all the more difficult" to "[e]stablish[] that a state court's application of Strickland was unreasonable under § 2254(d)." Id. (quoting Premo v. Moore, 562 U.S. 115, 122 (2011)).

### 1.      Failure to Object to Detectives' Testimony

Petitioner's first claim of ineffective assistance of counsel is based on his attorney's failure to object or request limiting instructions regarding recordings played during trial, in which the detectives who interrogated Petitioner repeatedly stated that Petitioner was untruthful and guilty. (Objs. at 3.) Petitioner argues that trial counsel's stated strategy, which was accepted

by the Pennsylvania state courts as the basis for denial of relief, was not a reasonable trial strategy.[3]  (Id. at 5-6.)  He claims that counsel's failure to object to the detectives' testimony was particularly prejudicial because he testified on his own behalf at trial and, in stark contrast to the detectives' testimony, professed his innocence.  (Id. at 3.)

When Petitioner raised this claim during the PCRA proceedings, he asserted that "the jury may well have deferred to the expertise and opinions of veteran law enforcement investigators to conclude that the Petitioner was not truthful in his denials and thus he must be guilty as charged."  (Petition for Relief under the Post-Conviction Relief Act, ("PCRA Pet.") at 7.)  He argued on appeal that the detectives' statements "invad[ed] the jury's credibility determining function."  White III at 15 (quotation omitted).  The Superior Court agreed that "the recordings contained objectionable statements that could be construed as invading the exclusive fact-finding function of the jury."  Id. at 18.  However, the Superior Court nonetheless concluded that Petitioner's right to effective assistance of counsel had not been violated by his attorney's failure to request a limiting instruction, because trial counsel demonstrated a reasonable basis for his trial strategy, which involved a conscious decision not to request a cautionary instruction regarding these recordings.  Id. at 21.  Relying on Commonwealth v. Koehler, 36 A.3d 121 (Pa.

---

[3]During the PCRA hearing, trial counsel described his trial strategy of deciding not to request a limiting instruction as follows:

> I was trying to point out at every juncture that [the detectives] had made up their minds of his guilt before actually doing the testing and actually investigating the case.  And that's exactly what [Petitioner] and I had talked about throughout the preparation of the trial . . . .  My problem . . . .  with cautionary instructions is most of the time, they do as much damage as any maybe good they do because they serve to do nothing but highlight any statements from the Court . . . The last thing I wanted to do was have the Judge say something about those things after I, had I thought, undermined them with the police in cross-examination.

(N.T. 9/10/15 at 20-21.)

2012), the Superior Court noted that, "'[u]nder some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do.'" White III at 19 (alteration omitted) (quoting Koehler, 36 A.3d at 146). The Superior Court concluded that counsel's stated strategy of juxtaposing the statements made by the detectives against the lack of physical evidence connecting Petitioner to the crime to show that "the investigators 'rushed' to the conclusion that [Petitioner] shot Botz," provided "a basis for foregoing objections" to the statements, which was part of a reasonable strategy. Id. at 19-20.

Petitioner argues that trial counsel's explanation for his failure to object or request a limiting instruction regarding the detectives' statements cannot be found to be a reasonable trial strategy under Strickland. (Pet'r's Mem. at 5-6.) Petitioner specifically challenges trial counsel's statement that he did not want to "highlight" the statements by objecting to them or requesting a curative instruction from the trial judge, arguing that counsel could not have been legitimately concerned about calling the jury's attention to these references, because the references were "repeated and pervasive." (Id.) Petitioner relies on Albrecht v. Horn, in which the Third Circuit held that defense counsel's decision to forego requesting a limiting instruction regarding evidence of spousal abuse was not reasonable because the evidence presented "'was not briefly or fleetingly presented.'" (Id. at 6 (quoting Albrecht v. Horn, 485 F. 3d 103, 127 (3d Cir. 2007)).) Petitioner further argues that counsel would not have needed to "abandon his theory of the police officers' lack of a thorough investigation" if counsel had simply objected to the recordings at sidebar or excused the jury. (Id. at 8.)

The Magistrate Judge recommends that we deny this claim because the state courts' application of Strickland to trial counsel's decision not to object or seek a limiting instruction

9

regarding the interrogations was not unreasonable.  (R&R at 12.)   In contrast to Petitioner's assertion that Albrecht is controlling, the Magistrate Judge distinguishes Albrecht for the following reasons: (1) evidence of the police disbelieving Petitioner was not "as inflammatory as the graphic evidence of spousal abuse" sought to be suppressed by the defendant in Albrecht; (2) unlike the evidence in Albrecht, which "carried with it the danger that the jury would use it for an improper purpose," Petitioner's dishonesty was already established by his changing testimony over the course of the interrogations; and (3) unlike in Albrecht, where the failure to request a limiting instruction was not aligned with a reasonable trial strategy, counsel's decision not to request a limiting instruction was consistent with his enunciated strategy of convincing the jury that the police "rushed to judgment" while interrogating Petitioner.  (Id. at 11-12 (internal quotation omitted).)

We find that the state court did not unreasonably apply Strickland in determining that trial counsel's strategy was a reasonable trial tactic.  There are compelling reasons to distinguish Albrecht from the instant case.  Most importantly, counsel articulated an objectively reasonable defense strategy during the PCRA hearing.  See Thomas, 428 F.3d at 501 ("[T]he defendant is most likely to establish incompetency where counsel's alleged errors of omission or commission are attributable to a lack of diligence rather than an exercise of judgment." (quoting 3 Wayne LaFave et al., Criminal Procedure § 11.10(c), at 714 (2d ed. 1999))).  Counsel stated that he had been trying to "'juxtapose those statements on the part of the police . . . against the actual lack of physical evidence.'"  White III at 19 (quoting N.T. 11/19/12 at 19-20.).  Trial counsel also testified at the PCRA hearing that he did not object to the testimony from the detectives because his trial defense strategy involved demonstrating that the police had "rush[ed] to judgment" about Petitioner's guilt and he believed that requesting a cautionary instruction would have

served only to "highlight" the detectives' statements in light of the fact that the jurors were "somewhat glazed over and . . . weren't paying as much attention to the transcript as possible." (N.T. 11/19/12 at 20-22.)   When questioned as to whether he had considered a cautionary instruction, trial counsel stated that although he had considered it, he believed that it would have been detrimental to the overall strategy, since he planned to undermine the detectives' testimony during cross-examination.   (Id. at 20-21.)   Albrecht itself holds that counsel may decide, for tactical reasons, not to request a limiting instruction as an accompaniment to testimony regarding a testimony that could prejudice a defendant by leading the jury to conclude that "he had a bad character and a propensity to commit the crime."   Albrecht, 485 F.3d at 127 ("Trial counsel is not constitutionally required to request a limiting instruction any time one could be given, because counsel might reasonably conclude that such an instruction might inadvertently call attention to the evidence of prior bad acts." (citing Buehl, 166 F.3d at 170)).   It is well established that trial counsel is afforded wide latitude in devising defense strategies.   See, e.g., Yarborough, 540 U.S. at 9-10 (rejecting ineffective assistance of counsel claim notwithstanding counsel's denigration of defendant as a "bad person, lousy drug addict, stinking thief, [and] jail bird" during closing arguments).

Petitioner objects to the Report and Recommendation by arguing that because the opinion of law enforcement can disproportionately influence a jury, the failure to object to the detectives' testimony was unreasonable.   (Pet'r's Mem. at 6-7 (citing United States v. Casas, 356 F.3d 104, 120 (1st Cir. 2004); United States v. Meises, 645 F.3d 5, 16 (1st Cir. 2011); and United States v. Grinage, 390 F. 3d 746, 751 (2d Cir. 2004)).)   However, if the failure to request a limiting instruction is part of an overall strategy conceived by trial counsel, the decision to forego a limiting instruction in an effort to avoid highlighting the evidence may nonetheless be effective

assistance of counsel.   See, e.g., Smiley v. Pitkins, Civ. A. No. 14-807, 2014 WL 11264717, at *9 (E.D. Pa. Nov. 19, 2014), report and recommendation adopted, 2016 WL 1457890 (E.D. Pa. Apr. 12, 2016) (rejecting ineffective assistance of counsel claim based on failure to request limiting instruction as to a question asked, but not answered, noting that "to have this Court further discuss the issue in front of the jury would raise the risk of it standing out in the jurors' minds"); United States v. Williams, 166 F. Supp. 2d 286, 294 (E.D. Pa. 2001) (rejecting an argument that counsel was ineffective for failing to request a limiting instruction because "[d]ownplaying the importance of this identification would have been a wise trial strategy which would be undermined by asking the court to give a specific instruction and thereby force the jury to focus on testimony which a reasonable trial lawyer would want them to forget about"); Johnston v. Love, 940 F. Supp. 738, 777 (E.D. Pa. 1996) (holding that "it was reasonable for counsel not to seek a limiting instruction" because it "would focus the jury's attention on this damaging evidence and would highlight [the incriminating] testimony"), aff'd, 118 F.3d 1576 (3d Cir. 1997).

Petitioner also emphasizes that the repetitiveness of the detectives' statements contributed to the unreasonablenesss of counsel's strategy.  However, as previously noted, counsel testified during the PCRA hearing that because the detectives' interrogation of Petitioner lasted for several hours, the jury began to "glaze over," leading counsel to believe that, contrary to Petitioner's assertions, the jury was not being influenced by the repetitiveness of the detectives' statements.  (N.T. 11/19/12 at 21-22.)  Moreover, trial counsel also testified during the PCRA hearing that the recordings of the detectives revealed that Petitioner told various versions of his story over the course of his interrogations, "a fact [he] did not want to highlight," which he thought "would do nothing but underscore what [he] though was absolutely problematic."  (N.T.

11/19/12 at 23.)  For example, during his first interrogation, Petitioner stated that he did not know that the victim had been killed, but, during his second interrogation, he stated that he had been present when the victim was killed.  White III at 15.  It is understandable that trial counsel would have attempted to minimize the effect of this damaging discrepancy, as well as others. Thus, we find that the Superior Court's determination that trial counsel did not provide ineffective assistance of counsel in deciding not to object, or to request a limiting instruction, with respect to these recordings was not an unreasonable application of Strickland or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[4]

### 2. Failure to Object or Seek Curative Instructions Regarding Petitioner's "Secret"

Petitioner's second claim of ineffective assistance of counsel is based on his trial attorney's failure to object or seek a limiting instruction in response to Mr. Tillman's testimony,

---

[4]Alternatively, we find that Petitioner has failed to satisfy the "prejudice" prong of Strickland.  To establish prejudice, Petitioner must demonstrate a "reasonable probability" that, "but for" counsel's failure to object or request a limiting instruction, the outcome would have been different.  Strickland v. Washington, 466 U.S. 668, 694 (1984); see also Branch v. Sweeney, 758 F.3d 226, 238 (3d Cir. 2014) (quoting Grant v. Lockett, 709 F.3d at 224, 235 (3d Cir. 2013) (clarifying that reasonable probability is "a probability sufficient to undermine confidence in the outcome" (citation omitted)).

Here, the trial record is replete with evidence that Petitioner shot the victim.  On direct examination, Tillman testified that Petitioner had admitted to shooting the victim in the head. (PCRA Pet. at 4.)  Mrs. Hurdle testified during the trial that Petitioner shot the victim.  White III at 3.  An eyewitness to the shooting testified during direct examination that she saw Petitioner "shoot the victim in the mouth."  (PCRA Pet. at 8 (citing N.T. 2/4/10, 177-79.).)  Petitioner's brother, Kenyata White, testified that he saw a gun in the car immediately after the shooting and that Petitioner told him that the victim "'had it coming.'"  White III at 4.  Given this wealth of inculpatory evidence in the state record, Petitioner has not demonstrated a "reasonable probability" that counsel's failure to object or request a limiting instruction changed the outcome of the case.  Strickland, 466 U.S. at 694.

and the prosecutor's references to, an unstated secret as Petitioner's motive to kill the victim. [5] Petitioner contends that the jury was presented with the suggestion that he committed a serious unlawful act - likely a murder - that Petitioner feared would be revealed by the victim.  (Pet'r's Mem. at 10-11.)  Petitioner further argues that, aside from Mr. Tillman's testimony, no other evidence presented at trial indicated that he had a motive to kill the victim and that the testimony was particularly harmful because both the prosecutor and the state trial judge in his charge to the jury alluded to Mr. Tillman's testimony.  (Id. at 10-11 (citing N.T. 2/9/10 at 22.).)

The PCRA court noted that "the Commonwealth's theory of the Petitioner's motive for the killing was that Mr. Botz was aware of something the Petitioner had done in the past," which Petitioner did not want "ever coming out."   White II at 12.  The PCRA court concluded that trial counsel was not ineffective for failing to object to the references to a "secret" motive because trial counsel explained during the PCRA hearing that the "secret" referred not to criminal conduct, but to alleged "'homosexual liaisons'" that Petitioner had with another person while incarcerated in state prison.  Id. (quoting N.T. 11/19/12 at 41.).  The Superior Court agreed, noting that "neither Tillman's testimony nor the Commonwealth's closing argument established that the alleged acts between [Petitioner] and his cellmate were prior bad acts." [6]  White III at 26.

---

[5] This aspect of the case is factually difficult to untangle.  During trial, Petitioner's trial counsel was faced with the prospect of Mr. Tillman, in his testimony, revealing that Petitioner had engaged in homosexual conduct with another inmate while imprisoned.  The Commonwealth sought to introduce this testimony to establish that Petitioner had a motive to kill the victim, who allegedly had been telling other people about Petitioner's prison conduct.  Trial counsel was able to prevent Mr. Tillman from revealing that Petitioner had engaged in homosexual conduct while imprisoned, based on the admissibility of evidence of a prior conviction, but he was not able to keep out the testimony that Petitioner was trying to protect a secret, which is admissible to establish motive.

[6] We also note that, notwithstanding Petitioner's argument in his Objections that his trial counsel failed to object or request a limiting instruction as to Mr. Tillman's testimony, the

Petitioner takes the position that the references to the secret should be treated as references to an inadmissible prior bad act because the only conclusion the jury could reasonably draw from the references was that he had committed another crime of such magnitude that the victim had to be silenced to prevent him from revealing the secret.  (Pet'r's Mem. at 12-13.) Although references to prior bad acts are admissible to establish motive, Petitioner asserts that such references must be accompanied by an appropriate limiting instruction.  (Id. at 13 (citing Commonwealth v. Billa, 555 A.2d 835, 841 (Pa. 1989); Commonwealth v. Page, 965 A.2d 1212, 1221 (Pa. Super. 2009); and Breakiron v. Horn, 642 F.3d 126, 144 (3rd Cir. 2011)).)  Petitioner contends that here, without an appropriate limiting instruction, the jury impermissibly considered references to the "secret" as prejudicial evidence of Petitioner's bad character and criminal propensity.  (Id. at 12-15.)

The Magistrate Judge recommends that we find that the state courts did not unreasonably apply Strickland in concluding that counsel's decision not to seek a limiting instruction was a reasonable strategic decision based on the following steps taken by Petitioner's trial counsel. Trial counsel testified during the PCRA hearing that the prosecution informed him that they had a witness, Mr. Tillman, who was going to testify that Petitioner had engaged in homosexual relations with another individual while incarcerated.  (R&R at 13.)  After Petitioner's trial counsel raised the issue with the trial court, "[t]he trial court determined that the proffer was admissible but required the Commonwealth to instruct Tillman not to reference [Petitioner's] prior incarceration."  White III at 26.  The Magistrate Judge notes that under Pennsylvania law, "'evidence of prior bad acts is admissible where there is a legitimate reason for the evidence, such as to establish motive.'"  (R&R at 13 (quoting Commonwealth v. Dowling, 883 A.2d 570,

Superior Court found that trial counsel objected to the prosecutor's proffer regarding this testimony.  White III at 25-26 (citing 2/2/10 N.T. at 32.).

578 (Pa. 2005)).)  Thus, trial counsel would not have been able to entirely exclude Mr. Tillman's testimony, since concealing the "secret" may have been Petitioner's motive for committing the murder.  (Id. at 14.)  The Magistrate Judge reasoned that although counsel was unable to keep out the testimony entirely, he "sought instead to minimize its detrimental effect" by relegating Mr. Tillman's testimony to a vague somebody did something statement.  (Id. at 14-15 (quotation omitted).)

Petitioner objects to the Magistrate Judge's Recommendation by arguing that although it is "conceivable" that the jury could have concluded that the "secret" referred to lawful behavior, it is "far more reasonable" for the jury to have concluded that the secret conduct was "particularly egregious and consequential misconduct that would have brought substantial harm to the Petitioner had it been exposed."  (Objs. at 13-14.)  Petitioner argues that his trial counsel had a constitutional obligation to request "an appropriate cautionary and limiting instruction" as to this reference.  (Id. at 14.)

Given that trial counsel did object to Tillman's testimony, our inquiry is whether the state courts unreasonably applied Strickland in finding that counsel's decision not to seek a limiting instruction was reasonable.   Petitioner may be correct in arguing that a juror could conclude that the secret referred to a past crime, but the inescapable fact of the matter is that the secret did not refer to a prior bad act, and thus was properly admissible to establish motive.[7]  Moreover, the state court record shows that during the PCRA hearing, trial counsel testified that he made the tactical decision to keep out the fact that Petitioner had allegedly engaged in homosexual behavior while incarcerated.  (N.T. 11/19/12 at 44.)  Trial counsel stated that if it had come out

---

[7]We have not found any cases in our jurisdiction holding that if a jury erroneously believes that an act referred to during trial is a prior bad act, the inference is treated as requiring a limiting instruction or an objection.

during trial that Petitioner had been involved in homosexual activity, it "certainly would have been a problem for [Petitioner] in Allentown."  (Id.)  He further stated that "Allentown is a small town" and that in his view, it would have been detrimental to the overall case "to assert that about somebody who's a family man or who has a wife in a small town."  (Id.)  "[T]rial counsel's strategic choices are reviewed with a strong presumption of correctness."  United States v. Martin, 262 F. App'x 392, 395 (3d Cir. 2008) (citation omitted).  Strickland's deficient performance prong is highly deferential to counsel.  Strickland, 466 U.S. at 689.  Given Strickland's presumption of correctness regarding counsel's strategic decisions, we find that Petitioner has not demonstrated that trial counsel's decision not to request a limiting instruction with regard to these references constituted deficient performance.  Because the reasoning of the state court is not contrary to nor an unreasonable application of the standard set forth in Strickland, and the state court decision did not involve an unreasonable determination of the facts, we deny Petitioner's claim for ineffective assistance of trial counsel as to trial counsel's decision not to seek a limiting instruction with regard to references to the "secret" on this basis.

      B.     Certificate of Appealability

Petitioner objects to the Magistrate Judge's recommendation that we decline to issue a certificate of appealability.  Federal Rule of Appellate Procedure 22(b)(1) provides that "[i]n a habeas corpus proceeding in which the detention complained of arises from process issued by a state court . . . . the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1). Section 2253(c) provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The Third Circuit has explained that "a certificate is granted only if the petitioner makes: (1) a

credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition alleges a deprivation of constitutional rights." Morris v. Horn, 187 F.3d 333, 340 (3d Cir. 1999) (adopting the "well-reasoned rule" set forth by the Fifth Circuit in Sonnier v. Johnson, 161 F.3d 941, 943-44 (5th Cir. 1998)).  The Supreme Court has also explained that "to obtain a [cause of action] under § 2254(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 483-84 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 and n.4 (1983) (superceded on other grounds by 28 U.S.C. § 2253(c)(2))).

We find that Petitioner has failed to make a substantial showing of the denial of a constitutional right, and to demonstrate that a reasonable jurist would debate the correctness of this ruling.  See Slack, 529 U.S. at 484.  Consequently, we overrule Petitioner's objection to the Magistrate Judge's recommendation that we should not issue a certificate of appealability.

**IV.   CONCLUSION**

For the foregoing reasons, we overrule each of Petitioner's objections and adopt the Report and Recommendation in its entirety.  In addition, as Petitioner has failed to make a substantial showing of the denial of a constitutional right or demonstrate that a reasonable jurist would debate the correctness of this ruling, we decline to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2).  An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova, J.
John R. Padova, J.